Helfrich *vs.* Catonsville Water Company.

(Decided 16th June, 1891.)

## SAMUEL D. HELFRICH *vs.* THE CATONSVILLE WATER COMPANY.

*Riparian rights—Pasturing cattle—Injunction—Legislative power — Declaration of Rights — Acquisition of Water right by Making due Compensation.*

A pure and natural stream of fresh water flowed through and along the land of H. as also through the land of a water company situated about one hundred and forty perches further down

Helfrich *vs.* Catonsville Water Company.

the stream, and was the principal source of supply for the company's business. A bill of complaint was filed by the water company, alleging that H. permitted a large number of his cows to enter said stream and stand therein, whereby it was greatly polluted and defiled, so that when the stream flowed through the water company's land and supplied its works, the purity of the water was greatly impaired, and it was rendered unhealthy and unfit for drinking purposes. On appeal from an injunction issued upon this bill restraining H. from such use of the stream, it was HELD :

1st. That as it appeared from the evidence that H. used his lot for the purpose of pasturing his cows, in the way a proprietor under ordinary circumstances might reasonably use his own property, his rights had been in no way abridged or diminished by the incorporation of the water company, and it was not in the power of the Legislature to abridge them.

2nd. That this was a right of property protected by the Declaration of Rights.

3rd. That the water company had power under its charter to acquire the water-right by making due compensation to the owner, and not otherwise.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*Ferdinand C. Dugan,* and *George R. Willis,* for the appellant.

The appellant being seized of the land through which the stream passes, has the right to use so much of the water thereof as may be necessary to supply his natural wants—to quench thirst, for household purposes, and water for his cattle. *Gould on Waters, sec.* 205; *Angell*

Helfrich *vs.* Catonsville Water Company.

*on Watercourses, secs.* 93*a*, 121, 122, 128; *Evans vs. Mer-riwether*, 3 *Scammon*, 495; *Mayor, &c. of Balto. vs. Appold*, 42 *Md.*, 456, 457; *Union Mill & Mining Co. vs. Ferris*, 2 *Sawyer*, 176, 194; *Middlesex Co. vs. McCue*, 149 *Mass.*, 103; *Gillett vs. Johnson*, 30 *Conn.*, 180; *Arnold vs. Foote*, 12 *Wendell*, 330; 3 *Kent's Com.*, *note, page* 441; *Perkins vs. Dow*, 1 *Root*, (*Conn.*,) 535.

A riparian owner's natural wants include watering cattle, and, in some instances, irrigation and propelling machinery; and it is contended on the part of the appellant that this is so old and so well settled, by common consent, that it is obvious in itself. *Gould on Waters*, sec. 220; *Snow vs. Parsons*, 28 *Vermont*, 459; *Blanchford, et al. vs. Baker, et al.*, 8 *Greenleaf*, (*Maine*,) 253; *Prentice vs. Geiger*, 74 *N. Y.*, 343; *Arnold vs. Foote*, 12 *Wendell*, 330.

The natural wants also include the bathing of persons in the stream, and the watering of cattle in the stream. *Moulton, et al. vs. Newburyport Water Co.*, 137 *Mass.*, 166; *Wheatley vs. Chrisman*, 24 *Penn. State*, 302; *Dwight Printing Co. vs. City of Boston*, 122 *Mass.*, 587.

The appropriation of water for natural uses, such as for the use of people, cattle, and for household purposes, which must be absolutely supplied, can afford no ground for an injunction, even if it were entirely consumed. *Slack vs. Marsh, et al.*, 11 *Phila.*, 543; *Rhodes vs. Whitehead*, 27 *Texas*, 310; *Anthony vs. Lapham*, 5 *Pick.*, 175.

To the general rule founded on the equity of right in the waters of a stream that one riparian proprietor should not so use the same as essentially or materially to diminish the quantity of water, to the detriment of another—an exception is allowed in those cases in which it is used for natural wants and domestic purposes, in contradistinction to artificial or mechanical purposes. *Mayor, &c. of Balto. vs. Warren Mfg. Co., et al.*, 59 *Md.*, 108; *Wood vs. Sutcliffe*, 2 *Simons*, (*N. S.*,) 163; *Rhodes*

*vs. Whitehead,* 27 *Texas,* 304, 310; *Baker vs. Brown,* 55 *Texas,* 377; *Coulson and Forbes, Law of Waters,* 115; *Fleming vs. Davis,* 37 *Texas,* 196; *Miner vs. Gilmour,* 12 *Moore's P. C. Cases,* 131.

What constitutes a reasonable use of a stream, must not be ascertained arbitrarily. The injunction forbids the appellant to permit his animals to stand in the stream, and to deposit in any manner any filth therein. It is not contended that the appellant had a barn-yard so constructed, as to cause the stream to flow through it and become befouled; and it cannot be contended that he caused his cows to stand in the stream or caused them to defile it; so, if the appellant has done none of the things complained of, he surely cannot, in equity, be enjoined from doing an act which he has never done. If the cows were not led to the stream and made to drink, and to do the things complained of, can it be successfully contended, that because they so did in obedience to their instincts and nature, the appellant must abridge these natural uses and reverse the order of things; and, instead of the beast going to the stream to drink, the water must be brought to the beast? No Court has yet determined that a riparian owner cannot pasture his lands, as against the wishes of a water company, to convert the stream to a new and different use. Slight pollution from a reasonable use must be borne. *Rideout vs. Knox,* 148 *Mass.,* 308; *Wood vs. Sutcliffe,* 2 *Simons, N. S.,* 163–167.

The appellant's use of his three and a half acres of land, together with the balance of his land, on the north side of the turnpike, for agricultural purposes, including the pasturing of his own cows, was a natural use of his land and the stream flowing through it; and such natural use is paramount to all others, and having been enjoyed by the appellant and those under whom he claims for more than twenty years before the appellee acquired its land and converted the grist-mill site into artificial

Helfrich *vs.* Catonsville Water Company.

water-works, the right of such natural use cannot be taken away from him without due process of law within the meaning of the Constitution of this State. *Messinger's Appeal*, 109 *Penn. State*, 285; *Mayor, &c. of Baltimore vs. Warren Mfg. Co.*, 59 Md., 106; *Pugh vs. Wheeler*, 2 *Dev. & Battle*, (*N. C.*), 50.

*Edwin J. Farber*, and *John I. Yellott*, for the appellee.

The appellee, as riparian owner along the stream in question, claims the right to have the water come to it in its pure and natural condition. *Wood on Nuisances*, (1883), *p.* 500, *sec.* 427; *High on Injunctions*, (1890), *secs.* 794 and 798; *Pomeroy on Riparian Rights*, (1887), *sec.* 8; *Kerr on Injunctions*, *sec.* 378; *Woodyear vs. Schaefer*, 57 *Md.*, 8 and 9.

Equity will protect this right by injunction. 1 *High on Injunctions*, (1890), *secs.* 794, 795, 798, *and cases cited; Kerr on Injunctions*, *secs.* 377 *and* 378, *p.* 392, *and cases cited; Holsman vs. Boiling Spring, &c., Co.*, 1 *McCarter* (*N. J.*) *Chancery*, 335; *Clowes vs. Staffordshire, &c., Co.*, 8 *Chancery Appeals*, (*Law Reports*,) 142 *and* 143; *Lockwood Co. vs. Lawrence*, 77 *Maine*, 297; *Red River Roller Mills vs. Wright*, 30 *Minnesota*, 251; *Gould on Waters*, *sec.* 219; *McCallum vs. Germantown Water Co.*, 54 *Penna.*, 53.

BRYAN, J., delivered the opinion of the Court.

The Catonsville Water Company was incorporated by the Act of 1886, chapter 100. It was chartered for the purpose of enabling it to supply with pure water the inhabitants of Catonsville and the adjoining portion of Baltimore County. In pursuance of its charter it has acquired a tract of land, and constructed at large expense a dam and reservoir, water-works, mains and pipes; and is engaged in supplying a large number of people with water for drinking and other necessary purposes. A

pure, clear, natural stream of fresh water flows through and along the land of Samuel D. Helfrich, and through the land of the Water Company, which is situated about a hundred and forty perches further down the stream, and is the principal source of supply for the purposes of the company's business.

A bill of complaint was filed by the Water Company on the equity side of the Circuit Court for Baltimore County, in which it was alleged that Helfrich permitted a large number of his cows to enter said stream, and stand therein, and that they dropped their excrement, dung and filth into its waters, and greatly polluted and befouled them, and that in consequence of such deposits, when the stream flowed through the Water Company's land and supplied its works, the purity of the water was greatly impaired, and it was rendered unhealthy and unfit for drinking purposes. On these grounds an injunction was prayed and granted, restraining Helfrich from permitting cows or other animals to enter or stand in the stream, and to drop or deposit therein any excrement, dung or filth, or in any manner to pollute or befoul it. The injunction as granted, also prohibited the erection of a hydraulic ram; but (as we shall see) this question is not now presented by the record. After answer and testimony, the Court on final hearing made the injunction perpetual so far as it related to the pollution of the stream, and dissolved it as to the erection of the hydraulic ram. The defendant appealed to this Court.

Helfrich's lot is on the south side of the Frederick Turnpike, about one mile west of the village of Catonsville, and about half a mile from the Water Company's property. The lot has been used by the owner as a pasture for his cows, and so far as the evidence shows, it seems to be well adapted for such a purpose, being well provided with shade, grass and water. Helfrich at the time the injunction was issued, owned six

Helfrich *vs.* Catonsville Water Company.

·cows, and it appears that he used his lot for the purpose of pasturing them in the way a proprietor under ·ordinary circumstances might reasonably use his own property. The question seems to be whether his rights have been in any way abridged or diminished by the incorporation of the Water Company, and the construction of its works. The rights of riparian owners are well understood, and there is, a general concurrence of ·opinion in the Courts as to the manner in which they must be exercised. The law on this subject is strictly in accord with the common sense and general convenience of mankind. The owner of land has a right to the use of a stream of water which flows through it, for all useful and reasonable purposes. This use is not an easement, but is an incident to his property in the soil; a necessary, inherent and inseparable portion of his ownership. But there is an equality of right in other riparian owners above and below him on the same stream; and from the necessary conditions of the case, they must not use the water to the prejudice of each other's rights. Hence difficult questions frequently arise; not as to the ·ascertainment of the principle of decision, but as to its application to interests which are in collision. It is laid down in general terms that every owner has the right to enjoy the stream of water which flows through his land in its natural state, without diminution to its flow, quantity or purity. It is also held with like generality of statement, that any defilement or corruption ·of the water, which prevents its use for any of its reasonable or proper purposes, is an infringement of the rights of riparian owners, which will entitle them to a remedy suited to the nature of the case. But all ·abstract rules are subject to considerable modification, when they are applied to the exigencies of human life. The right to the use of a stream of water in its natural purity cannot override other co-equal and co-existing

Herilfch *vs.* Catonsville Water Company.

rights; it must certainly yield to those of a more absolute and unqualified character. The tillage of the soil, and the tending of flocks and herds, were the earliest occupations of the human race. The husbandman soweth his seed, and gathereth the harvest to furnish us with food; and the flocks and herds bring forth their increase for our use. It would be most unnatural and unwise to put any unnecessary restrictions on those pursuits which furnish the world with the means of subsistence. We must confess that the right of a man to cultivate his own fields and to pasture his cattle on his own land is of an original and primary character, and that it would be oppressive to interfere with the free exercise of it, except under a necessity caused by grave public considerations. The washings from cultivated fields might, and probably would, carry soil and manure into streams of water, and make them muddy and impure. And so the habits of cattle according to their natural instincts, would lead them to stand in the water and befoul the stream. But nevertheless the owner of the land must not lose the beneficial use of it. The inconveniences, which arise from the pollution of the water by these causes, must be borne by those who suffer from them. The ordinary requirements of domestic life diminish the purity of the atmosphere; but as long as these causes are within the limits of reason and necessity, the law recognizes no ground of complaint against them. The reasonable and proper exercise of acknowledged right by one man, may and often does work annoyance and loss to another; but rights cannot be forfeited for this reason.

So far as we can see from the record, there was nothing unreasonable or unusual in the way in which the cattle were pastured in this lot. If Helfrich had wantonly or recklessly befouled the water of the stream, or had harassed the Water Company, or injured its business by an immoderate and excessive exercise of his

Helfrich *vs.* Catonsville Water Company.

acknowledged rights, he would justly have been responsible for his conduct. But nothing of this kind can be justly attributed to him. He seems to have used his pasture, as all men, time out of mind, have done in like cases. We are not unmindful of the vast number of cases where persons have been enjoined from committing nuisances in running streams, and from depositing, or permitting to be deposited in them noxious, deleterious or unwholesome matter, and from any unlawful or unreasonable thing which impairs the legitimate use of the water by riparian owners. Nor have we overlooked the numerous cases where it has been held that certain kinds of manufacturing establishments have infringed the vested rights of such owners. Our opinion is placed on the distinct ground that Helfrich was using his pasture lot in a reasonable manner, and that he had a right so to use it. His right was not in any way abridged by the incorporation of the Water Company and the establishment of its works. And it was not in the power of the Legislature to abridge it. It is a right of property protected by the Declaration of Rights. The Water Company has power under its charter to acquire the water-right by making due compensation to the owner, and not otherwise.

The decree of the Circuit Court must be reversed, and the bill of complaint dismissed.

> *Decree reversed, and*
> *bill dismissed.*

(Decided 16th June, 1891.)