[No. 8223. Department One. December 16, 1909.]

CHARLES H. McEVOY et al., Respondents, v. ANDREW TAYLOR et al., Appellants.[1]

WATER AND WATER COURSES—RIPARIAN RIGHTS—POLLUTION—REASONABLE USE. The owner of a small tract of land upon which there are springs, forming a pond about twenty feet wide by forty feet long, cannot be enjoined by a lower riparian owner from use of the same for a few geese, and horses and cattle at pasture, as the same is a reasonable use, and pollution of the stream thereby is a natural incident to proper and reasonable use thereof.

SAME—NONRIPARIAN OWNERS. One who is not a riparian owner but who diverted the waters of a spring to his own land by pipes, cannot enjoin the pollution of the waters by an upper riparian owner who had used the waters on his own lands for ten years prior to the diversion.

Appeal from a judgment of the superior court for Walla Walla county, Brents, J., entered December 30, 1908, in favor of the plaintiffs, enjoining the use and interference with the waters of a pond, after a hearing before the court. Reversed.

Dunphy, Evans & Garrecht, for appellants.

MORRIS, J.—Appellants own a small tract of land on the outskirts of Walla Walla. Springs of water rise upon the land, and the waters therefrom form a small pond about twenty feet in width and forty feet in length. From this pond the water flows in a small stream down upon and across respondents' property. The action was brought, alleging the pollution of the water by appellants in permitting their horses, cattle, and geese to use the pond so as to befoul its waters and render its use unfit for respondents. The action resulted in the court enjoining the appellants from permitting their horses, cattle, or geese from entering into and corrupting the water, so as to prevent its flow in its natural purity; commanded them to clean out the spring, restoring it to its

[1]Reported in 105 Pac. 851.

natural condition, and to remove a hog pen situate near the head of one of the springs, which last spring, however, did not empty its water into the pond. From the decree so entered, defendants have appealed.

Respondents have not appeared in this court, so that we have not the benefit of a brief in their behalf. The only question involved in the appeal is the general one involved in the decree. The parties being riparian owners, their respective rights to the use of the water are to be determined by their rights as such riparian owners. These rights are now well established. Each riparian owner is entitled to a reasonable use of the waters as an incident to his ownership, and as all owners upon the same stream have the same right of reasonable use, the use of each must be consistent with the rights of others, and the right of each is qualified by the rights of others. We are speaking now of rights common and incidental to riparian ownership, without regard to, and unaffected by, any modification of grant, prescription, or prior appropriation, which ofttimes enters into and largely determines the use of water by riparian owners. In cases of this character, the question to be determined largely is, What is a reasonable use, and is the diminution and pollution of the stream other and beyond the rights accorded under a reasonable use? If the upper owner goes beyond this reasonable use and damages the lower owner, then he must answer in damages or have his unreasonable use enjoined. But if his proper and reasonable use causes damage to the lower owner, such damage flowing from the proper use of a natural right is *damnum absque injuria.*

Having determined the character of permissive use of the water by the upper owner, we will examine the evidence to ascertain whether or no appellants' use extended beyond their rights. The tract of land owned by appellants comprises seven and one-half acres. The spring and pond are enclosed, with about one-third of an acre, by a fence with an open gateway. Appellants at the time of the trial below

owned three horses, two cows, and five geese. They had at different times had as many as six cows and six or seven horses, and for about four months in the year they have as many as twenty geese, the increase being goslings which are sold each year in the fall. The cows and geese roam around in the pasture land outside the spring enclosure. The cows come down through the open gateway to the pond to drink, and the geese at times swim upon its surface. The horses are also watered there. After leaving appellants' tract, the water flows about three hundred feet, when it reaches the point where respondents take it, using it for the laundry and bath-room, but not for drinking or culinary purposes. Respondents and witnesses testify to seeing the horses, cows, and geese in the pond; that the pond sometimes has what they describe as a "green scum" on its surface, and leaves and feathers float upon it; that the water when it reaches them has a bad odor, and in their opinion is unfit for domestic use. Other witnesses for appellants testify to drinking the water at the point of respondents' taking, and finding it sweet and clear. Others that the spring and pond were clean.

It cannot be gathered from all the evidence of respondents but that the use of the spring and pond by appellants was a natural use. They had a right to use the spring and pond to water their cattle or for their geese to swim upon, and the pollution of the water being a natural incident to a proper and reasonable use cannot be restrained nor prevented. *Gould v. Hudson River R. Co.*, 6 N. Y. 522, 552. In the case of *Helfrich v. Cantonsville Water Co.*, 74 Md. 269, 22 Atl. 72, 28 Am. St. 245, 13 L. R. A. 117, a case similar in many respects to the case before us, the court discussing the rights of the parties says:

"We must confess that the right of a man to cultivate his own fields, and to pasture his cattle on his own land, is of an original and primary character, and that it would be oppressive to interfere with the free exercise of it, except under a necessity caused by grave public considerations. The washings from cultivated fields might, and probably would, carry

soil and manure into streams of water, and make them muddy and impure. And so the habits of cattle according to their natural instincts would lead them to stand in the water and befoul the stream. But, nevertheless, the owners of the land must not lose the beneficial use of it. The inconveniences which arise from the pollution of the water by these causes must be borne by those who suffer from them. . . So far as we can see from the record, there was nothing unreasonable or unusual in the way in which the cattle were pastured in this lot. If Helfrich had wantonly and recklessly befouled the water of the stream, or had harassed the water company or injured its business by an immoderate and excessive exercise of his acknowledged rights, he would justly have been responsible for his conduct. But nothing of this kind can be justly attributed to him. He seems to have used his pasture as all men, time out of mind, have done in like cases. We are not unmindful of the vast number of cases where persons have been enjoined from committing nuisances in running streams, and from depositing or permitting to be deposited in them noxious, deleterious, or unwholesome matter, and from any unlawful or unreasonable thing which impairs the legitimate use of the water by riparian owners. Nor have we overlooked the numerous cases where it has been held that certain kinds of manufacturing establishments have infringed the vested rights of such owners. Our opinion is placed on the distinct ground that Helfrich was using his pasture lot in a reasonable manner, and that he had a right so to use it."

A like conclusion is reached in *People v. Hulbert*, 131 Mich. 156, 91 N. W. 211, 100 Am. St. 588, 64 L. R. A. 265, where the court reviews many authorities, holding the ordinary use of the water for the home and cattle is a reasonable use, and hence a permissive use.

In *Hazeltine v. Case*, 46 Wis. 391, 32 Am. Rep. 715, it was held that the keeping of hogs enclosed in a yard upon a small running stream was a reasonable use, even though the hogs so befouled the stream that the lower proprietor could not use the water for culinary purposes. See, also, Gould, Waters, §§ 205, 366. We, therefore, hold that appellants' use of the spring and pond was a natural and reasonable use, and that it cannot be enjoined.

The spring which did not flow into the pond, but was likewise affected by the decree of the court, was riparian to appellants' lands, but not to respondents, it being shown that in its natural state the water from it flowed into Garrison creek, and could not reach respondents' lot unless intercepted, piped, and thus diverted, which respondents did about two years ago; while appellants' use which was enjoined had been for twelve years. Respondents, being nonriparian proprietors, could not enjoin the use against a prior riparian proprietor. When respondents appropriated this water, they appropriated what then existed, and no cause of action is open to them to change rights acquired by a prior lawful use. *Conrad v. Arrowhead Hot Springs Hotel Co.*, 103 Cal. 399, 37 Pac. 386.

We therefore hold the injunction was improperly issued, and the judgment is reversed and the action will be dismissed.

RUDKIN, C. J., GOSE, and CHADWICK, JJ., concur.