[No. 12488.    Department One.    February 5, 1915.]

RUFUS PACKWOOD *et al.*, *Respondents*, v. MENDOTA COAL & COKE COMPANY *et al.*, *Appellants*.[1]

WATERS AND WATER COURSES—POLLUTION—RIPARIAN RIGHTS—DOMESTIC USE. An upper riparian owner, a coal mining company, has no right to use the waters of a stream for washing coal and turn the water back into the stream polluted with foreign substances rendering it unfit for domestic and farm purposes, thereby causing substantial damages to a lower riparian owner entitled to the use of the stream in its natural purity for agricultural and domestic purposes and watering stock.

APPEAL—REVIEW—HARMLESS ERROR—EVIDENCE. Reversible error cannot be claimed in the admission of relevant testimony as to one of the defendant's acts in polluting a stream, of which there was insufficient evidence to support that item of the complaint, which was practically abandoned; there being no motion made to exclude the evidence, and no requests for instructions thereon.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered June 22, 1914, upon the verdict of

[1]Reported in 146 Pac. 163.

a jury rendered in favor of the plaintiff, in an action in tort. Affirmed.

*Dysart & Ellsbury* and *C. D. Cunningham,* for appellants.
*Forney & Ponder,* for respondents.

PARKER, J.—The plaintiffs seek recovery of damages which they claim resulted from the pollution of a natural stream of water running through their farm, by the unlawful acts of the defendants. Trial before the court and a jury resulted in verdict and judgment in favor of the plaintiffs for the sum of $1,000, from which the defendants have appealed.

Respondents have been, for some forty years past, the owners of a farm in Lewis county, which in recent years they have developed into a valuable dairy farm, and through which flows a natural stream of water, known as Packwood creek. The water flowing in this stream is by nature pure and fresh, well suited for domestic and farm purposes, and especially for watering stock of all kinds. It has a continuous flow at all seasons of the year, and in its natural state of purity, adds materially to the value of respondent's farm. Appellant Mendota Coal & Coke Company, hereinafter called the company, has, since the year 1910, owned and operated a coal mine near Packwood creek, some two miles above respondents' farm. Appellant Johnson has had the active management of the company's mine during the whole of this period. In preparing the coal for market, the company washes it by the use of water taken from Packwood creek, which, after flowing through the washing machinery, flows back into the stream, carrying with it quantities of fine coal, rendering, as the evidence tends to show, the water flowing in the stream through respondents' farm unfit for domestic and farm purposes, and especially unfit for watering stock, which is its principal value to respondents. In the operation of its mine, the company main-

tains some fifty dwelling houses for its employees, from which the sewage is drained to cesspools situated a short distance from the banks of Packwood creek. This is also alleged by respondents in their complaint to contribute to the pollution of the water of the stream flowing through their farm. The company is the owner of the land upon which its mine and washing machine and dwelling houses are situated, and by virtue of the ownership of that land, has riparian rights in the water of Packwood creek equal with the riparian rights of respondents.

Contention is made by counsel for appellants that the evidence is not sufficient to sustain the verdict and judgment, and that, in any event, the verdict is excessive. After a careful review of all the evidence in the record before us, we have reached the conclusion that neither of these contentions can be sustained. We do not feel called upon to analyze the evidence here. We deem it sufficient to say that we are satisfied that the evidence is ample to sustain the conclusion that respondents were damaged in the sum of $1,000 by the pollution of the waters of the creek from the washing of the coal, though the evidence is not free from conflict upon that question. The evidence tending to show damage from the maintenance of cesspools in connection with the dwelling houses of the employees of the company, it must be conceded, is not at all convincing, even assuming that it is uncontradicted. This, however, would not warrant our interfering with the verdict upon the ground of insufficiency of the evidence, since the evidence of damage from the washing of the coal is sufficient to sustain the verdict. It may be here remarked that the record, read as a whole, renders it quite apparent that the principal damage claimed by respondents was that resulting from the washing of the coal, especially in that the water of the stream was thereby rendered unfit for stock watering purposes. This, we think, must have been equally apparent to the jury.

Several of the assignments of error made and relied upon by counsel for appellants challenge the ruling of the trial court in giving instructions and refusing to give others requested. Instructions requested by counsel for appellants rest upon the theory of the company's right to the reasonable use of the water of Packwood creek, even if the water should by such use become materially polluted and respondents substantially damaged thereby. The court gave to the jury, among others, the following instructions:

"I instruct you that although you find that the contamination or pollution complained of is not poisonous nor deleterious to stock or to human beings, nevertheless if it is of such nature as to render the water less fit for use for domestic, farm or dairy purposes, either by man or beast, then, in law, the said stream has been polluted and contaminated for which plaintiffs are entitled to recover damages, if they have suffered any damages, and if you find that defendants have done such acts as to render said stream less fit for such uses, your verdict must be for the plaintiff in such amount as you shall find that defendants have injured the plaintiffs in that respect."

This instruction is complained of as rendering appellants liable for even the slightest pollution of the water of Packwood creek, and thereby depriving the company of the reasonable use of the water as a riparian owner. It is possible there would be some merit in this contention if this instruction stood alone. It is, however, only a very general statement of the company's liability touching its right to the use of the water. It was followed by an instruction given to the jury by the court, as follows:

"It is indeed, the right of a riparian owner to have the water of a stream come to him in its natural purity and this rule is recognized as well as the right to have it flow to his land in its natural flow in volume but in reference to this as well as the air, it is not every interference with the water that imparts impurities that is actionable, but only such as impart to the water such impurities as substantially impair its value for the ordinary purposes of life and render it

measurably unfit for domestic purposes and thus impairs
the comfortable or beneficial enjoyment of property in the
vicinity. So even though you should find that the water
of Packwood creek as it now flows is not as pure and whole-
some as it was previous to the time the Mendota Coal and
Coke Company commenced the operation of its mine at
Mendota, yet if by the operation of that mine the defend-
ants have not substantially or materially polluted the water
of said Packwood creek then under the law your verdict
must be for the defendants."

These instructions read together we think state the cor-
rect measure of the limit of the company's riparian right
to the use of the water of Packwood creek in the light of
respondents' equal riparian right therein, and in view of the
fact that the company's use of the water was concededly
not for domestic or farm purposes. Putting aside, for the
moment, consideration of the possible pollution of the
stream by cesspools maintained by the company, we are con-
strained to hold that, in view of the fact that the pollution
of the water was caused, as the jury evidently found, from
the washing of coal by the company, its liability for dam-
ages to respondents depends upon the extent of detriment
to them from that cause. That is, if the acts of the com-
pany resulted in the pollution of the water of the stream
flowing through respondents' farm to a substantial degree,
and rendered it materially less suitable for domestic and
farm purposes and they thereby suffered substantial dam-
ages, appellants became liable therefor; though this might
not be the limit of the company's right to the use of the
water as riparian owner were it putting the water to ordi-
nary domestic and farm uses, under the law as announced
by us in *McEvoy v. Taylor*, 56 Wash. 357, 105 Pac. 851,
26 L. R. A. (N. S.) 222, where we held, in effect, that the
use of the water of a stream by a riparian owner for ordi-
nary farm and domestic purposes, such as allowing his
horses, cattle, and fowl free access thereto, was a reasonable
use and did not render him liable in damages to a lower

riparian owner entitled to the use of the water for farm and domestic purposes, though such use rendered the water materially less pure to such lower riparian owner's substantial damage.

The use of the water of a stream for industrial or manufacturing purposes by a riparian owner, by which it is polluted with a foreign substance, we think is quite another matter, when it comes to testing such owner's right as against a lower riparian owner entitled to the use of the water for farm and domestic purposes. In such cases, at least, and possibly some others, we believe the law to be that the right to the reasonable use of water by a riparian owner for manufacturing or industrial purposes, resulting in the pollution of the water with foreign substances, is limited to the extent that such use must not *materially* pollute the water to the *substantial* damage of the lower riparian owner. This we think is the fair import of these instructions.

In *Snow v. Parsons*, 28 Vt. 459, 67 Am. Dec. 723, in considering the alleged pollution of a stream by a manufacturing plant, Chief Justice Redfield, speaking for the court, said:

"The reasonableness of such use must determine the right, and this must depend upon the extent of detriment to the riparian proprietors below. If it essentially impairs the use below, then it is unreasonable and unlawful, unless it is a thing altogether indispensable to any beneficial use at every point of the stream. An extent of deposit, which might be of no account in some streams, might seriously affect the usefulness of others. So, too, a kind of deposit, which would affect one stream seriously, would be of little importance in another. There is no doubt one must be allowed to use a stream in such a manner as to make it useful to himself, even if it do produce slight inconvenience to those below. This is true of everything which we use in common with others. The air is somewhat corrupted by the most ordinary use; large manufacturing establishments affect it still more seriously; and some, by reason of their vicinity to a numerous population, become so offensive and destructive

of comfort, and health even, as to be regarded as common nuisances. Within reasonable limits, those who have a common interest in the use of air and running water, must submit to small inconveniences to afford a disproportionate advantage to others. It seems to us that this question of the reasonableness of the use of a stream, when it is not settled by custom, and is in its nature doubtful, should always be regarded as one of fact, to be determined by the tribunal trying the facts."

These observations of the learned Chief Justice are quoted with approval in the text of 2 Cooley, Torts (3d ed.), p. 1216.

In *Merrifield v. Lombard*, 13 Allen 16, 90 Am. Dec. 172, Chief Justice Bigelow, considering the alleged pollution of a stream by a manufacturing plant, observed:

"The law requires of a party through whose land a natural watercourse passes that he should use the water in such manner as not to destroy, impair or materially affect the beneficial appropriation of it by the proprietors of land below on the same stream. Each riparian owner has the right to use the water for any reasonable and proper purpose, as it flows through his land, subject to the restriction that he shall not thereby deprive others of a like use and enjoyment of the stream as it runs through their land. Any diversion or obstruction of the water which substantially diminishes the volume of the stream, so that it does not flow *ut currere solebat*, or which defiles and corrupts it to such a degree as essentially to impair its purity and prevent the use of it for any of the reasonable and proper purposes to which running water is usually applied, such as irrigation, the propulsion of machinery, or consumption for domestic use, is an infringement of the right of other owners of land through which a watercourse runs, and creates a nuisance for which those thereby injured are entitled to a remedy. An injury to the purity or quality of the water to the detriment of other riparian owners, constitutes, in legal effect, a wrong and an invasion of private right, in like manner as a permanent obstruction or diversion of the water."

In *Day v. Louisville Coal & Coke Co.*, 60 W. Va. 27, 53 S. E. 776, 10 L. R. A. (N. S.) 167, there was involved the pollution of a stream by the casting of coal and coke refuse

from a mine and coke ovens in and near the water of a stream to the damage of a lower riparian owner of farm lands bordering thereon, rendering the water "unfit for agricultural and domestic purposes." Discussing the company's claimed right to make such use of the stream by virtue of its riparian ownership, Justice Branon very pertinently observed:

"This case involves principles very important everywhere, but especially important in this state at present and in the future; but these principles are old and have been called into requisition through many, many years in actions for the pollution of streams, and casting into them hurtful things, and depositing them upon lands of riparian owners on the stream below. The defendant contends that as it was using its property in carrying on a lawful business very useful to the public it is exempt from liability, as it was only exercising its rights. We are told by the able brief of the defendant's counsel that the affirmance of this judgment will be vastly hurtful and disastrous to the mining and coke interests of West Virginia, and have a tendency to detract from the value of our land, and hinder the development of the great wealth of coal and iron in the bowels of our mountains, and will be subversive of great public policy, which demands the development of our wealth therein, and tends to the weal of the whole people of the state; and that a few individuals injured thereby must be without redress. We cannot accede to this broad proposition. The established maxim of centuries is *Sic utere tuo ut alienum non laedas* (so use your own property that you do not injure another). That rule is almost equal to the Golden Rule in importance, and must never be lost sight of in the daily doings and transactions of organized society. A man has land upon a stream. He is its sole lord. No one has a right to injure that land. It is protected by the Constitution. If one up the stream in his works, be they ever so lawful, honorable, and necessary for private weal or public weal, do thereby injure the land of that owner further down by unlawful invasion of it, by casting upon it things damaging it, or by polluting the purity of the water, rendering it unfit for the owner's consumption as it passes through his land, the man up the stream must

answer in damages.  One man without fault is injured by
another.  That is enough for liability."

See, also, *Greene v. Nunnemacher,* 36 Wis. 50 ; *Tetherington
v. Donk Bros. Coal & Coke Co.,* 232 Ill. 522, 83 N. E. 1048 ;
*Bowman v. Humphrey,* 124 Iowa 744, 100 N. W. 854 ; *Stro-
bel v. Kerr Salt Co.,* 164 N. Y. 303, 58 N. E. 142, 79 Am.
St. 643, 51 L. R. A. 687 ; *Bowling Coal Co. v. Ruffner,* 117
Tenn. 180, 100 S. W. 116, 9 L. R. A. (N. S.) 923 ; *Drake v.
Lady Ensley Coal, I. & R. Co.,* 102 Ala. 501, 14 South. 749,
48 Am. St. 77, 24 L. R. A. 64, and note; *Young & Co. v.
Bankier Distillery Co.,* A. C. 691 (Eng.) 1893.

It has been well said: "It is difficult, if not impossible, to
declare a rule in language so clear and precise as that it can
be applied with certainty to every case that may arise."
*Tennessee Coal, Iron & R. Co. v. Herndon,* 100 Ala. 252, 14
South. 287, 46 Am. St. 48.  We believe it safe, however, to
say that, in the absence of rights resting upon prescription or
custom, neither of which is here involved, there can be no
more practical or just rule of liability resting upon riparian
owners using the water of a stream for industrial or manu-
facturing purposes and thereby polluting the water with for-
eign substances, than that damages caused by such use and
pollution of the water renders such user liable to a lower
riparian owner entitled to use of the water for domestic and
farm purposes whenever such damage is of a substantial na-
ture.  This of necessity results in the question being one for
the jury, except in cases where the evidence is such as to
leave no room for honest difference of opinion as to the sub-
stantial nature of the damage.

Our attention is called to the case of *Pennsylvania Coal
Co. v. Sanderson,* 113 Pa. St. 126, 6 Atl. 453, 57 Am. Rep.
445, which counsel for appellants principally rely upon in
support of their contentions in this branch of the case.  That
decision has received some criticism from the courts, both in
this country and England.  We think, however, it is, in any
event, distinguishable from the case before us.  The stream

involved in that case was polluted by the flow of water by gravity alone from a coal company's mine. As said at page 147 of the opinion:

"It is clear that for the consequence of this flow, which by the mere force of gravity, naturally, and without any default of the defendants, carried the water into the brook and thence to plaintiff's pond, there could be no responsibility as damage on the part of the defendants,"

and on page 155, it is said:

"The defendants introduced nothing into the water to corrupt it, the water flowed into Meadow Brook just as it was found in the mine. Its impurities were from natural and not from artificial causes."

The water was not taken from the stream, used in washing the coal and returned to the stream in a polluted condition carrying foreign substances as in this case. Even the Pennsylvania court in the later case of *Lentz v. Carnegie Bros. & Co.*, 145 Pa. St. 612, 23 Atl. 219, 27 Am. St. 717, disposed of a question similar to that here involved, upon a theory not materially out of harmony with our present conclusion.

Some contention is made by counsel for appellants against certain instructions given by the court to the jury which, it is contended, in effect permit the jury to ignore the evidence tending to show pollution of the stream from other sources than the company's mining plant. The instructions, as a whole, however, we think render it quite clear that the jury were plainly given to understand that appellants were to be held liable only for their own acts and to the extent of the damage attributable thereto.

It is contended that the trial court erred in the admission of evidence over objections of counsel for appellants tending to show the maintenance of cesspools in connection with the dwellings of the company's employees near the stream. We have noticed that this was one of the claimed causes of the pollution of the stream alleged in respondents' com-

plaint.  It seems to us that the objection to this evidence goes only to its weight and therefore that its admission must rest largely in the discretion of the trial court.  Evidence is not inadmissible merely because it does not within itself prove all that the party offering it is contending for as to the particular item of damage claimed.  We are not able to see that the evidence was irrelevant at the time it was offered, though we must confess that, if respondents' right of recovery rested alone upon their claimed pollution of the stream from this source, appellants probably would have been entitled to a nonsuit.  However, we do not find in the record any motion to exclude this evidence from the consideration of the jury made after its admission, nor do we find any request for instructions touching the consideration of this evidence by the jury.  Upon the whole record, we are not able to see that any error has been committed in this regard which counsel for appellants can now complain of.  It is apparent from the record before us, viewed as a whole, that this claim of pollution of the stream was all but lost sight of in the trial of the case and it is hard to believe that it had any influence upon the minds of the jury as a contributing cause of the pollution of the stream.  Upon the whole record, we do not feel warranted in disturbing the judgment upon this ground.

We conclude that the record is free from prejudicial errors and that the judgment must be affirmed.  It is so ordered.

MORRIS, C. J., HOLCOMB, MOUNT, and CHADWICK, JJ., concur.