[No. 12569.   Department One.   September 13, 1915.]

NATCHES & COWYCHE DITCH COMPANY, *Appellant*, v.
GEORGE WEIKEL *et al.*, *Respondents.*[1]

WATERS AND WATER COURSES—IRRIGATION—APPROPRIATORS—RIGHTS —POLLUTION.  Plaintiff, the prior appropriator of the waters and of a portion of the bed of a stream for use for irrigation, cannot complain of the reasonable use of the stream by upper proprietors for the purpose of drainage whereby waste waters taken by them from a canal for irrigating their lands flowed into the stream (which was the natural drainage of such lands), and rendered the water muddy and deposited some silt in plaintiff's irrigation canal and pipes, causing some inconvenience and damage, the water not being so polluted as to render it unfit for irrigation; since plaintiff's appropriation did not give it greater rights than those of a riparian owner, or deprive upper proprietors of the right to reasonable use of the stream.

Appeal from a judgment of the superior court for Yakima county, Grady, J., entered December 29, 1913, upon granting a nonsuit, dismissing an action for an injunction, tried to the court.  Affirmed.

[1]Reported in 151 Pac. 494.

*Davis & Morthland* and *McAulay & Meigs*, for appellant.
*Williamson & Luhman*, for respondents.

Mount, J.—This action was brought by the plaintiff against more than one hundred defendants and their wives to perpetually enjoin the defendants from allowing water used for irrigation to flow from their lands into Cowyche creek. The case was tried to the court without a jury, and at the conclusion of the evidence on behalf of the plaintiff, the court dismissed the action for the reason that the evidence, in his opinion, was not sufficient to show an injurious pollution of the water of Cowyche creek by the defendants, and for the further reason that the use of Cowyche creek for the drainage of waste waters from the lands of the defendants did not violate the rights of the plaintiff. The plaintiff has appealed from that judgment.

The principal facts as shown upon the trial may be briefly summarized as follows: The Natches river flows southeast in Yakima county. Cowyche creek is south of the river and flows in the same general direction, converging slightly toward the Natches river, and empties into that river in sec. 9, twp. 13 N., R. 18 E. W. M. In the year 1882, the plaintiff company built a canal for irrigation purposes from a point in section 9, southeastward about 7½ miles to the city of North Yakima, in Yakima county. This canal was constructed across the bed of Cowyche creek a short distance above the mouth of that creek, the principal intake of the canal being from the Natches river at a point about one-half mile northwest of where the canal crosses Cowyche creek. The canal crosses the bed of Cowyche creek so that the bed of the creek forms the bed of the canal at the crossing. Below the point where the canal crosses this creek, the plaintiff company erected a dam to back up the waters of Cowyche creek so that the supply of water in the canal might be obtained both from Cowyche creek and from the Natches river.

8—87 WASH.

At the time this canal was constructed, Cowyche creek flowed an intermittent stream. In the spring months there was sufficient water in Cowyche creek to supply the canal, so that it was not necessary to take water from the Natches river; and from about the first to the middle of July, Cowyche creek became dry, and water was then taken from the Natches river. The water carried in this canal was used principally for irrigation. It watered some 2,200 acres of land near the city of North Yakima, and a portion of the lots in that city. It was formerly used slightly for domestic purposes; but in later years has ceased to be used for domestic purposes, and is used now solely for irrigation.

The lands of the defendants lie south of the Natches river, and are high, rolling table lands. Cowyche creek flows through a canyon 100 to 150 feet deep in some places, with almost perpendicular walls of rock near its mouth. This creek is the natural drainage for a large scope of country. The defendants own the lands on both sides of Cowyche creek above the point where plaintiff's canal crosses that creek.

In the year 1906, when the Tieton system for irrigating these lands was under consideration, the plaintiff renounced to the government the right to all the waters of the Natches river and Cowyche creek except 40 cubic feet per second of time for the months of May, June, July, and August, and for a smaller quantity during the months of September and October. In the year 1913, a branch of the Tieton system of irrigation was constructed upon the highlands down the divide between the Natches river and Cowyche creek. Another branch was constructed upon the highlands to the south of Cowyche creek. After the construction and the use of the Tieton system of irrigation upon these highlands, waste waters from irrigation find their way into Cowyche creek, which is the natural drainage of that country. In some places small streams of water sometimes run down to Cowyche creek. The result was that, during the year 1913, there was a continuous flow of water in Cowyche creek. This water was roily and

muddy.   The sediment carried down Cowyche creek found its way into the plaintiff's canal, and silt would settle in the canal and in the pipes used for irrigating town lots in the city of North Yakima, and obstructed the flow of the water in these pipes and in the canal.

The position of the appellant is that, having appropriated the waters in Cowyche creek and having used the bed of that creek where its canal crosses, for a period of thirty years, it is a prior appropriator, and is entitled to the natural flow of all the waters of Cowyche creek undiminished in quality, and that, because the waste waters from the defendants' lands caused Cowyche creek to become muddy, and to deposit silt in the canal and pipes, the court should have restrained the defendants from permitting the flow of these waste waters into Cowyche creek, or required the defendants to pay the cost of building a siphon across Cowyche creek at the point where the canal crosses that creek.

The defendants, on the other hand, contend that Cowyche creek, being the natural drainage for the lands of the defendants, the defendants are entitled to the reasonable use of that creek to carry off the waste waters from their irrigated lands.   The defendants contend further that the evidence fails to show that they have made an unreasonable use of Cowyche creek, and for this reason the judgment of the trial court should be affirmed.

A large number of authorities are cited by the appellant to sustain its contention to the effect that a prior appropriator of water in a stream is entitled not only to the quantity of water covered by its appropriation, but also to have the same continue to flow without being so polluted or diminished by the discharge of refuse or other matter therein as to render it unfit for use for the purposes of irrigation, and that it is entitled to an injunction restraining such pollution.   We think there can be no doubt about the correctness of this rule where the water is actually polluted and rendered unfit for

the use to which it has been put. But we think the evidence
in this case fails to show that the water in the creek is pol-
luted so as to render it unfit for such use. The evidence dis-
closes that, for many years, this water has been used only
for irrigation. It is true there was some slight evidence to
the effect that at one time the water from the creek was used
in a few instances for domestic purposes. But we think the
great weight of the evidence offered by the plaintiff is to the
effect that such use had ceased long prior to the time when
the defendants permitted waste waters to escape from their
lands into the creek, and that the only use now made of the
water is for irrigation. The evidence further conclusively
shows that the only damage the waste waters from the defend-
ants' lands do to the plaintiff's irrigation system is that silt
settles in the canal, and in some cases has clogged pipes where
the water has been used for irrigation. But there is no evi-
dence in the record that the water has been rendered unfit
for irrigation.

In the case of *Atchison v. Peterson*, 20 Wall. 507, the su-
preme court of the United States said:

"What diminution of quantity, or deterioration in quality,
will constitute an invasion of the rights of the first appro-
priator will depend upon the special circumstances of each
case, considered with reference to the uses to which the water
is applied. A slight deterioration in quality might render
the water unfit for drink or domestic purposes, whilst it would
not sensibly impair its value for mining or irrigation. In all
controversies, therefore, between him and parties subsequent-
ly claiming the water, the question for determination is neces-
sarily whether his use and enjoyment of the water to the ex-
tent of his original appropriation have been impaired by the
acts of the defendant. But whether, upon a petition or bill
asserting that his prior rights have been thus invaded, a
court of equity will interfere to restrain the acts of the party
complained of, will depend upon the character and extent of
the injury alleged, whether it be irremediable in its nature,
whether an action at law would afford adequate remedy,
whether the parties are able to respond for the damages re-

sulting from the injury, and other considerations which ordinarily govern a court of equity in the exercise of its preventive process of injunction."

Considering the circumstances of the case, it is shown that Cowyche creek is the natural drainage of the lands owned by the defendants. They are highlands susceptible of irrigation and cultivation. The quantity of the defendants' lands is at least equal to those owned and irrigated by the plaintiff. While the plaintiff has appropriated all the waters of Cowyche creek, it has not appropriated the whole bed of the stream, but only the bed of the stream where the canal crosses it. The fact that the plaintiff has, for a period of thirty years, appropriated and used the waters of Cowyche creek in its canal, does not give it a monopoly upon the whole stream. No negligence is shown or claimed against the defendants. It is merely shown that they have irrigated their lands from the Tieton canal in the usual manner, and that the waste water from these irrigated lands runs into Cowyche creek, carrying more or less silt, so that the waters of Cowyche creek are rendered muddy; and some silt, of course, is necessarily deposited in the plaintiff's canal; but it is not shown that the water is rendered unfit for irrigation.

In the case of *People v. Hulbert,* 131 Mich. 156, 91 N. W. 211, 100 Am. St. 588, 64 L. R. A. 265, the supreme court of Michigan said:

" 'It is not every impurity imparted to the water, however small in degree, that will be the subject of an injunction. All running streams are, to a certain extent, polluted; and especially are they so when they flow through populous regions of country, and the waters are utilized for mechanical and manufacturing purposes. The washing of the manured and cultivated fields and the natural drainage of the country of necessity bring many impurities to the stream; but these and the like sources of pollution cannot ordinarily be restrained by the court. Therefore, when we speak of the right of each riparian proprietor to have the water of a natural stream flow through his land in its natural purity,

those descriptive terms must be understood in a comparative sense, as no proprietor does receive, nor can he reasonably expect to receive, the water in a state of entire purity. But any use that materially fouls and adulterates the water, or the deposit or discharge therein of any filthy or noxious substance that so far affects the water as to impair its value for the ordinary purposes of life, will be deemed a violation of the rights of the lower riparian proprietor, and for which he will be entitled to redress. Anything that renders the water less wholesome than when in its ordinary natural state, or which renders it offensive to taste or smell, or that is naturally calculated to excite disgust in those using the water for the ordinary purposes of life, will constitute a nuisance, and for the restraint of which a court of equity will interpose.' . . . 'Broadly stated, the general rule is that the owner of the land through which a stream of water runs has a right to have it flow over his land in the natural channel, undiminished in quantity, and unimpaired in quality, except in so far as diminution or contamination is inseparable from a reasonable use of such water.' "

In *Dumont v. Kellogg*, 29 Mich. 420, 18 Am. Rep. 102, the court said:

"But as between two proprietors, neither of whom has acquired superior rights to the other, it cannot be said that one 'has no right to use the water to the prejudice of the proprietor below him,' or that he cannot lawfully 'diminish the quantity which would descend to the proprietor below,' or that 'he must so use the water as not materially to affect the application of the water below, or materially to diminish its quantity.' Such a rule would be in effect this: that the lower proprietor must be allowed the enjoyment of his full common law rights as such, not diminished, restrained, or in any manner limited or qualified by the rights of the upper proprietor, and must receive the water in its natural state as if no proprietorship above him existed. Such a rule could not be the law so long as equality of right between the several proprietors was recognized, for it is manifest it would give to the lower proprietor superior advantages over the upper, and in many cases give him in effect a monopoly of the stream."

In the case of *McEvoy v. Taylor*, 56 Wash. 357, 105 Pac. 851, 26 L. R. A. (N. S.) 222, we said:

"We are speaking now of rights common and incidental to riparian ownership, without regard to, and unaffected by, any modification of grant, prescription or prior appropriation, which ofttimes enters into and largely determines the use of water by riparian owners. In cases of this character, the question to be determined largely is, What is a reasonable use, and is the diminution and pollution of the stream other and beyond the rights accorded under a reasonable use? If the upper owner goes beyond this reasonable use and damages the lower owner, then he must answer in damages or have his unreasonable use enjoined. But if his proper and reasonable use causes damage to the lower owner, such damage flowing from the proper use of a natural right is *damnum absque injuria*."

Further along, quoting from *Helfrich v. Catonsville Water Co.*, 74 Md. 269, 22 Atl. 72, 28 Am. St. 245, 13 L. R. A. 117:

"We must confess that the right of a man to cultivate his own fields, and to pasture his cattle on his own land, is of an original and primary character, and that it would be oppressive to interfere with the free exercise of it, except under a necessity caused by grave public considerations. The washings from cultivated fields might, and probably would, carry soil and manure into streams of water, and make them muddy and impure. And so the habits of cattle according to their natural instincts would lead them to stand in the water and befoul the stream. But, nevertheless, the owners of the land must not lose the beneficial use of it. The inconveniences which arise from the pollution of the water by these causes must be borne by those who suffer from them."

And so we think it is in this case. While the appellant has appropriated the water of Cowyche creek, and has appropriated a part of the bed of that stream, it has no greater right in the water or in the bed of the stream than an upper riparian owner. It appropriated the water of the stream knowing that the country above, in time, might be settled and cultivated, and that the upper proprietors would have a

right to the reasonable use of the stream both for drainage and for irrigation, and might use the water and the stream in a reasonable manner. In short, its appropriation gave it no more right to the stream than an ordinary riparian owner.

In the case of *Packard v. Mendota Coal & Coke Co.*, 84 Wash. 47, 146 Pac. 163, quoting from *Snow v. Parsons*, 28 Vt. 459, 67 Am. Dec. 723, it was said:

"There is no doubt one must be allowed to use a stream in such a manner as to make it useful to himself, even if it do produce slight inconvenience to those below. This is true of everything which we use in common with others. The air is somewhat corrupted by the most ordinary use; large manufacturing establishments affect it still more seriously; and some, by reason of their vicinity to a numerous population, become so offensive and destructive of comfort, and health even, as to be regarded as common nuisances. Within reasonable limits, those who have a common interest in the use of air and running water, must submit to small inconveniences to afford a disproportionate advantage to others."

In *Merrifield v. Worcester*, 110 Mass. 216, 14 Am. Rep. 592, the court said:

"Cultivating and fertilizing the lands bordering on the stream, and in which are its sources, their occupation by farm-houses and other erections, will unavoidably cause impurities to be carried into the stream. As the lands are subdivided and their occupation and use become multifarious, these causes will be rendered more operative, and their effects more perceptible. The water may thus be rendered unfit for many uses for which it had before been suitable; but so far as that condition results only from reasonable use of the stream in accordance with the common right, the lower riparian proprietor has no remedy.

"When the population becomes dense, and towns or villages gather along its banks, the stream naturally and necessarily suffers still greater deterioration. Roads and streets crossing it, or running by its side, with their gutters and sluices discharging into it their surface water collected from over large spaces and carrying with it in suspension the loose

and light material that is thus swept off, are abundant sources of impurity, against which the law affords no redress by action."

And so in this case, this natural stream is a natural outlet for the drainage of waters from these highlands. The proprietors of these highlands adjoining this natural outlet have the same right to drain their lands into this creek that the plaintiff does to take the water from the creek; and so long as the defendants make a reasonable use of the stream and are not negligent in conveying waste waters into the stream, we are satisfied, under the authorities above quoted, that the plaintiff has no right to complain of the reasonable use of the stream by the upper proprietors, even though there is a slight damage to it by reason of the water being slightly polluted. The plaintiff must accommodate its appliances for irrigation to the conditions which a reasonable use may require. As we have indicated above, the only damage that is shown by the appellant is that some silt has settled in its canal and in the pipes used for irrigation. Until the plaintiff can show an unreasonable use by the defendants in conveying waste waters into this creek, there is clearly, we think, no cause for an injunction.

We are satisfied that the trial court properly denied the injunction, and the judgment appealed from must therefore be affirmed.

MORRIS, C. J., HOLCOMB, and ELLIS, JJ., concur.