[No. 42885.    En Banc.    February 28, 1974.]

ROBERT C. MORRIS, *Appellant*, v. HOWARD C. McNICOL et al., *Respondents*.

*Schweppe, Doolittle, Krug, Tausend, Beezer & Beierle,* by *Rex B. Stratton,* for appellant.

*Kenneth L. LeMaster, James A. Andersen, Frank J. Conway,* and *James M. Beecher,* for respondents.

WRIGHT, J.—This is an appeal from a summary judgment in favor of all respondents, dismissing with prejudice appellant's action for damage to real property. On April 7, 1970, appellant filed this action against respondents. The amended complaint sought damages of $80,000 as well as affirmative relief. This complaint alleged that drainage accumulations and abnormal flooding on appellant's lakefront property were caused by the grading and removal of soil and vegetation from respondents' properties.

Appellant owns a 100 by 300 foot waterfront lot on Lake Washington located near the entrance to Lake Forest Park at Bothell Way. Lyon Creek (also known as Lyons Creek) meanders through this property on which appellant's residence is located and empties into Lake Washington. Some time in 1967, appellant noticed that there was an accumulation of sand and gravel at the mouth of Lyon Creek and along his lake shoreline. By late winter of 1967-68, the creek bed and the nearby lake area were being filled in with material which came down the creek. This caused abnormal flooding which damaged appellant's house and yard.

Respondents' properties are located on or near Lyon Creek approximately 3 miles upstream from appellant's waterfront lot.

Respondent Terrace Acres, Inc. owns a tract of land approximately 40 acres in size located just north of the Snohomish-King County line. Lyon Creek has its source a short

distance north of the Terrace Acres property and runs through said property in a southerly direction. Respondents Gaston, d/b/a North City Excavators and major shareholders in Terrace Acres, Inc., removed in excess of 50,000 cubic yards of sand and gravel from this land between February and June of 1967.

Respondents McNicol own land located east of the Terrace Acres, Inc. property. This land is a plateau-like area of about 26 acres, known as Horizon Hills, located about 900 feet from Lyon Creek. Beginning in 1967, this land was bulldozed and cleared for building sites.

Respondents Fruhling, d/b/a Ed's Bulldozing, own property to the south of and adjoining the McNicol property. The Fruhling property consists of a westerly tract and an easterly tract, which tracts are separated by two other ownerships. Lyon Creek runs through this area. Some time after 1963, respondents Fruhling removed about 50,000 cubic yards of sand and gravel from the 10-acre westerly area and leveled the area for platting purposes. Then, some time after 1966 or 1967, they removed sand and gravel from the easterly area.

According to the deposition of appellant's expert witness, a soil engineer, other possible sources of material deposits in Lyon Creek include: (1) natural drainage from road networks; (2) various areas of erosion upstream; (3) drainage from ditches and culverts that empty into the creek; (4) natural phenomenon in nature to have deltas form at the mouth of a creek; (5) material deposits as the result of the construction of a sewer in the creek; (6) erosion and material deposits as the result of excavation and construction of a shopping center over the bed of Lyon Creek, approximately two blocks from the location of appellant's property; and (7) the artificial rerouting of the creek around this shopping center.

Respondents moved for summary judgment on the following grounds: (1) respondents breached no duty owed to appellant and the type of injury complained of afforded appellant no cause of action under the doctrine of damnum

absque injuria; (2) respondents' exercise of their right to control, manage or improve their land did not constitute the actual and proximate cause of appellant's alleged injury; (3) respondents' liability, if any, is several and appellant could not prove the amount of damages attributable to each respondent; and (4) appellant's cause of action was barred by the applicable statute of limitations.

On May 5, 1972, at the conclusion of oral argument on the motion for summary judgment, the trial court indicated its tentative ruling to grant the motion, but reserved signing an order pending review of exhibits referred to in depositions. Subsequently, on June 1, 1972, the trial court granted respondents' motion for summary judgment and denied appellant's motion for reconsideration.

The issue appealed is whether the trial court erred in granting respondents' motion for summary judgment. We answer this question in the affirmative.

Pursuant to CR 56(c), a summary judgment is only available where, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."

A "material fact" is a fact upon which the outcome of the litigation depends, in whole or in part. CR 56; *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963); *Zedrick v. Kosenski*, 62 Wn.2d 50, 380 P.2d 870 (1963).

Moreover, the burden is on the party moving for summary judgment to demonstrate that there is no genuine dispute as to any material fact and all reasonable inferences from the evidence must be resolved against him. *Barber v. Bankers Life & Cas. Co.*, 81 Wn.2d 140, 500 P.2d 88 (1972); *Welling v. Mount Si Bowl, Inc.*, 79 Wn.2d 485, 487 P.2d 620 (1971). Thus, where a motion for summary judgment is made, it is the duty of the trial court to consider all evidence and all reasonable inferences therefrom in a light most favorable to the nonmovant. *Maki v. Aluminum Bldg. Prods.*, 73 Wn.2d 23, 436 P.2d 186 (1968).

The motion should be granted only if, from all the evidence, reasonable men could reach but one conclusion. CR

56(c); *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 421 P.2d 674 (1966). Only when the pleadings, depositions, admissions, and affidavits considered by the trial court do not create a genuine issue of material fact between the parties is the moving party entitled to a summary judgment. *Ferrin v. Donnellefeld*, 74 Wn.2d 283, 444 P.2d 701 (1968).

For the purposes of a summary judgment procedure, an appellate court is required, as was the trial court, to review material submitted for and against a motion for summary judgment in the light most favorable to the party against whom the motion is made. *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wn.2d 528, 503 P.2d 108 (1972); *Robert Wise Plumbing & Heating, Inc. v. Alpine Dev. Co.*, 72 Wn.2d 172, 432 P.2d 547 (1967).

As pointed out above, respondents' motion for summary judgment was based on four grounds.

■ First, respondents contended they had breached no duty owed to appellant and that the type of injury alleged afforded appellant no cause of action under the doctrine of damnum absque injuria. This doctrine permits the landowner to protect his land against surface waters coming onto his land without regard to the effect of such improvement to surrounding landowners. *King County v. Boeing Co.*, 62 Wn.2d 545, 384 P.2d 122 (1963). However, as the record discloses, there are questions raised as to what respondents' purpose was in grading their respective properties and in removing soil and vegetation from them. Moreover, this doctrine applies only if the upland landowner's use is reasonable. *McEvoy v. Taylor*, 56 Wash. 357, 105 P. 851 (1909). Thus, reasonableness in the instant case is a material fact question which cannot be resolved by summary judgment proceeding. And the fact that the properties are separated by some distance does not alter any duties which the upland landowner may have to the lower riparian. *Tope v. King County*, 189 Wash. 463, 65 P.2d 1283 (1937).

■ Second, respondents contended that their actions in controlling, managing or improving their lands did not

constitute the actual and proximate cause of appellant's alleged injury. However, as the record shows, appellant introduced two affidavits of his expert witness, a soil engineer, which stated that respondents' actions on their respective properties created the major sources of the materials which caused injury to appellant's property. These statements were based on the affiant's personal observations of the properties and of aerial photographs of the area; and as an expert witness, he can give opinion testimony based on his observations and studies. An affidavit submitted in a summary judgment proceeding should comply with statutory requirements and conform, as nearly as possible, to what the affiant would be permitted to testify to in court. And, in summary judgment proceedings, courts will generally indulge in some leniency with respect to affidavits presented by the nonmovant. CR 56(e); *Meadows v. Grant's Auto Brokers, Inc.*, 71 Wn.2d 874, 431 P.2d 216 (1967).

In addition, appellant produced numerous photographs, government investigations, complaints and other exhibits to substantiate the allegation of his complaint. On the other hand, throughout the entire proceedings, respondents produced only one affidavit which merely stated that the property of respondents McNicol had been rough graded and partially cleared during the months of August and September 1967, apparently in an effort to show that such activities had occurred before these particular respondents had purchased their property. Thus, there is a material fact issue presented as to whether respondents' actions were the proximate cause of appellant's alleged injury.

Third, respondents contended that their liability, if any, is several and that appellant could not apportion damages. It is true that the deposition of appellant's expert witness stated that he could not tell what the percentage contribution of each of the properties he named would be to the sand and silt buildup in Lyon Creek. However, appellant subsequently introduced the above-mentioned two affidavits by this witness in which he specifically stated that he

could make an apportionment; and these affidavits explained that his studies and investigation had not been completed at the time of the deposition. There is thus a material fact question as to whether an apportionment can be made and, if so, what the apportionment would be.

Fourth, respondents contended that appellant's cause of action was barred by the applicable statute of limitations. Respondents argue that all cases dealing with "pollution-caused" damages are to be brought within the 2-year statute of limitations of RCW 4.16.130. Appellant's theory of the case is that he is not barred by any applicable statute of limitations, but that the limitation period operates only to cut off the period for which appellant may recover damages. *Riblet v. Spokane-Portland Cement Co.*, 41 Wn.2d 249, 248 P.2d 380 (1952). And that the cause of action arose not when the cause of damage arose but when the damage became evident and interfered with the use of his property. *Sterrett v. Northport Mining & Smelting Co.*, 30 Wash. 164, 70 P. 266 (1902). Regardless of whatever theory is applicable, the record discloses a dispute as to when appellant actually became aware of the damage and, indeed, when the alleged damage occurred.

The object and function of summary judgment procedure is to avoid an unnecessary trial; but a trial is absolutely necessary where there is a genuine issue as to any material fact. CR 56; *Barber v. Bankers Life & Cas. Co., supra.* Accordingly, the judgment of the trial court is reversed and remanded.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, UTTER, and BRACHTENBACH, JJ., concur.