## ELIZABETH SUMNER v. HENRY O'DELL, JR.

Eastern Section. ——— —, ——.

Greer & Greer, of Newport, for appellant.
W. D. McSween, of Newport, for appellee.

PORTRUM, J.  Elizabeth Sumner seeks to enjoin Henry O'Dell, Jr., from contaminating her water supply, and to require the defendant to use his property in a reasonable way, and to use water incident thereto for necessary use but so as not to contaminate and pollute unnecessarily the water before it reaches her property.

The land on which the spring rises and over which the spring branch runs was formerly one tract, owned by the brother of Mrs. Sumner.  He sold her a portion, granting her the right to the use of a spring located about 150 yards above her property line and on the land retained by the grantor.  She constructed a spring house on her property so as to use the branch water for household and domestic purposes.  She has been in possession of the property and using it in this way for a number of years, but a year or so ago the grantor sold the remaining tract of about forty acres to the defendant O'Dell, and he has recently constructed his fence in such a way as to use the spring branch and its banks, on his property, as a lane over which he drives his milk cattle and stock to a back pasture field.  His lands adjacent to the creek bank are under cultivation, and at this time he is asserting no right to use the water as a necessary incident to the pasturage of the lands adjacent to the water.  By reason of the construction of the fences in the manner detailed he has created a lot, with bars enclosing it at the point of the lane leading into the pasture field and also with bars enclosing it at the fence crossing the branch a few yards below the head or spring.  The spring is within a lot called the house lot and on

which the residence is located. O'Dell claims to use this lane only for the purpose of driving his milk cows to the milk gap at the spring and in the house lot, but, in the proof, it is shown that one or more calves had been confined in this lot. He insists, however, that he confines his calves in the house lot. It is easy to assume that in milking the cows it is necessary to keep them separated from the calves, and, to do so, either the calves or the cows must be confined in this so-called branch lot. There is not any dispute but what the use made of the lot has contaminated and befouled the water to an extent making it unfit for the use of the lower riparian owner.

It also clearly appears that if O'Dell had built his fences, which he claims to have built to protect his soy beans, on the south bank of this branch, the cattle could have passed to the milk gap without contaminating and befouling the water. A tenant, who helped to construct the fence, suggested to him that his location of the fence would cause trouble and that he build it on the south side and if he would do so the tenant would consent to the cutting of two or three rows of corn, to make the lane. He replied that the land belonged to him and he had a right to use it in the manner he was attempting to use it. A party representing Mrs. Sumner called his attention to the same thing, and he made him about the same reply.

The parties to this dispute are closely related, Mrs. Sumner being the aunt of Mr. O'Dell's wife. A great deal of feeling is shown in the record. Mr. O'Dell has indicated in case he wins his lawsuit and the water is decreed his, to use it in a manner that would greatly injure the lower riparian owner. It is not necessary to go farther into his state of mind.

The only issue presented in the record is, Did the use of the premises amount to an unreasonable use?

"Whether or not the pollution of the waters of a stream is an actual injury to a lower riparian proprietor depends upon whether it is the result of such reasonable use of the stream as the upper owner is entitled to make, or an unreasonable use in excess of his rights. So no actionable injury arises from the pollution resulting from using the water for bathing purposes, reasonable drainage into the stream, or pasturing a reasonable number of cattle on the land bordering on the stream and permitting them to drink therefrom." Waters—40 Cyc., 594.

In Helfrich v. Cantonsville Water Company, 74 Maryland, 269, 13 L. R. A., 117, it is said in note:

"The right of the owner of land bordering on a stream to use it as a pasture in a reasonable way is not affected by the fact that the waters are thereby unfit for use although the waterworks of an incorporated company have been established lower down to supply the public with water from the stream."

The court further said:

"But all abstract rules are subject to considerable modification when they are applied to the exigencies of human life. The right to the use of a stream of water in its natural purity cannot override other co-equal and co-existing rights; it must certainly yield to those of a more absolute and unqualified character. The tillage of the soil and the tending of flocks and herds were the earliest occupations of the human race. The husbandman soweth his seed and gathereth the harvest to furnish us with food; and the flocks and herds bring forth their increase for our use. It would be most unnatural and unwise to put any unnecessary restrictions on those pursuits which furnish the world with the means of subsistence. We must confess that the right of a man to cultivate his own fields, and to pasture his cattle on his own land, is of an original and primary character, and that it would be oppressive to interfere with the free exercise of it, except under a necessity caused by grave public considerations. The washings from cultivated fields might, and probably would, carry soil and manure into streams of water, and make them muddy and impure. And so the habits of cattle according to their natural instincts would lead them to stand in the water and befoul the stream. But, nevertheless, the owners of the land must not lose the beneficial use of it. The inconveniences which arise from the pollution of the water by these causes must be borne by those who suffer from them. The ordinary requirements of domestic life diminish the purity of the atmosphere; but as long as these causes are within the limits of reason and necessity the law recognizes no ground of complaint against them. The reasonable and proper exercise of acknowledged right by one man may, and often does, work annoyance and loss to another; but rights cannot be forfeited for this reason."

We are of the opinion, applying the rule as above given, that the defendant O'Dell applied the property to an unreasonable and unjustifiable use. In a note to this opinion a sketch of the premises is reproduced from a sketch found in the brief for the appellee. It demonstrates that O'Dell created a calf and cow-lot close to the banks of this spring branch when he could have easily made his lane on the south side of the stream and protected it from unnecessary pollution. This holding does not mean that O'Dell has not the right to throw the field on each side of this branch into a pasture and permit his stock to go to the branch to drink water. It is quite different to confine cattle on the bank and within the stream. Cattle grazing over a boundary spend a greater part of their time grazing; but cattle confined within a lot upon the banks necessarily find no way to escape, and the pollution is unduly increased. No one of the twenty-six witnesses who testified in this case attempts to say

500

how many acres is in what is known as the corn or soy bean patch. One witness says that across this lot is about 150 yards. In the whole tract there are only about forty acres, as we recall the record. It is shown the stream has been kept reasonably free from pollution for a long period of years. It is true that after the crops were removed, calves and possibly some cattle ran upon the stalk pasture, but the ground was of such small area that the pollution from this source would be inconsequential. There is a difference from using the stream as an incident to the pasture of the bean field or the corn field on the south, and as an incident to the removal of cattle from a well watered pasture field to the milk gap. If O'Dell can maintain this lane to drive his cattle to the milk gap, we see no reason why he can not maintain it to let his cattle come voluntarily to their calves at the milk gap.

We are of the opinion O'Dell subjected this property and this stream to an unreasonable and unnecessary use and that Mrs. Sumner is entitled to enjoin the pollution of the running water. This adjudication is confined to the use of the branch as a lane, which is held to be an unreasonable use and, of course, the adjudication has no bearing upon a reasonable use.

It results that this court is unable to concur in the findings of fact as found by the chancellor, who found that the use was a reasonable one, or that O'Dell had acquired a prescriptive right to use the property in this manner. The lane was only recently established. The decree of the chancellor is reversed, and a judgment entered here for an injunction restraining the present unreasonable use, as above defined. The appellee will pay the costs of the court below and this appeal.

Snodgrass and Thompson, JJ., concur.