IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SONDRA SAMPSON, a Washington resident, | ) ) ) | No. 40581-8-III |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| MATTRESS FIRM, INC., a Delaware Corporation; DEDICATED TRANSPORTATION, LLC, an Oregon Limited Liability Company; VALERY MUKHIN, a resident of the State of Oregon; JOHN DOE NO. 1 and JOHN DOE NO. 2, | ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Defendants, | ) ) ) | |
| DSI LOGISTICS, LLC, a Delaware Limited Liability Company, | ) ) ) | |
| Appellant, | ) ) | |
| BNS INSTALLATION INCORPORATED, an Oregon Company, | ) ) ) | |
| Respondent. | ) ) | |

MURPHY, J. — Sondra Sampson was injured when a delivery person lost control

of the bed frame being delivered to Sampson's home and it struck Sampson. Sampson

sued Mattress Firm, Inc. (Mattress Firm), DSI Logistics, LLC (DSI Logistics), and

Dedicated Transportation, LLC (Dedicated) based on the belief that Mattress Firm

retained DSI Logistics to deliver the purchased products, and DSI Logistics contracted with Dedicated to make this particular delivery. DSI Logistics later pursued a third-party complaint against BNS Installation Incorporated (BNS) for breach of contract, contractual defense and indemnity, and additional insured obligation, alleging that BNS, not Dedicated, made this particular delivery to Sampson.

BNS moved for summary judgment dismissal of the third-party complaint, arguing the evidence showed that Dedicated, not BNS, made the delivery where Sampson was injured. The trial court found that DSI Logistics failed to present sufficient evidence to create a genuine issue of material fact as to whether BNS made the Sampson delivery and dismissed DSI Logistics' third-party complaint. We agree and affirm.

FACTS

*Overview*

Sondra Sampson purchased "Red Carpet Delivery Service" when she bought a mattress, mattress protector, bed frame, and pillow from Mattress Firm. Clerk's Papers (CP) at 91, 111. Mattress Firm contracted with DSI Logistics to deliver the purchased items to Sampson's home. DSI Logistics does not make deliveries. Rather, it enters into independent hauler contracts with other entities to perform the actual deliveries. Relevant to this appeal, DSI Logistics had contracts with both Dedicated and BNS to deliver goods.

2

No. 40581-8-III
*Sampson v. Mattress Firm, Inc.*

The delivery of Sampson's purchases occurred on January 9, 2019. Sampson alleged that during the delivery service personnel lost control of the bed frame for the mattress, which sprang open and struck Sampson.

In November 2021, Sampson initiated a personal injury lawsuit in Cowlitz County Superior Court against Mattress Firm, DSI Logistics, Dedicated, Valery Mukhin, alleged to be the sole member of Dedicated, and two unidentified delivery personnel for Dedicated.

On August 30, 2023, DSI answered and asserted affirmative defenses to Sampson's complaint, and asserted a third-party complaint against BNS. DSI Logistics alleged that BNS entered an independent hauler's contract with DSI Logistics to deliver goods as the basis for its breach of contract and contractual indemnity claims, as well as other associated claims, and alleged it was BNS that made this particular delivery to Sampson. As evidence that BNS made the delivery to Sampson, DSI Logistics attached an order detail showing BNS as the contractor. The order detail is a DSI Logistics generated document used for billing approval and identifies the contractor for the Sampson delivery on January 9, 2019 to be "BNS Installation Incorporated" and "Timothy [Misiuk]."[1] CP at 353. The document's history shows that the order detail was

_____

[1] There are two spellings of Timothy Misiuk throughout the record: "Musiuk" and "Misiuk." At his deposition, his name is spelled "Misiuk" and we adopt this spelling.

3

created on January 15, 2019, at 9:04 p.m., by Jeff Costello.

BNS answered the third-party complaint on September 20, 2023, with denials of allegations and the specific denial that BNS made any delivery to Sampson. On December 18, 2023, BNS filed a motion for summary judgment. In its motion for summary judgment, BNS requested dismissal of all claims, asserting that it did not deliver the mattress and bed frame to Sampson, and alleging that DSI Logistics sued BNS on the sole basis that Dedicated was insolvent.

The trial court granted BNS's motion for summary judgment, concluding, "[t]here is no reasonable evidence supporting DSI [Logistics'] contention that BNS conducted the subject delivery and therefore BNS is dismissed with prejudice from this action." CP at 458.

*Red Carpet Delivery Service*

A service unit delivery report for the "Red Carpet Delivery Service" shows that on January 9, 2019, driver Victor Onofrei delivered to Sondra Sampson, at her home address in Longview, Washington, the items purchased from Mattress Firm between 5:22 p.m. and 5:40 p.m.

*Written discovery produced by DSI Logistics regarding the delivery*

In an April 14, 2022, response to written discovery requests from Sampson, DSI Logistics confirmed that this incident was investigated by DSI within weeks of its

4

No. 40581-8-III
*Sampson v. Mattress Firm, Inc.*

occurrence.[2] DSI Logistics stated that it contracted with Dedicated to perform the subject delivery to Sampson, and in the weeks following the January 9, 2019, occurrence, DSI investigated the claim in conjunction with Dedicated. Relevant interrogatories and answers include:

Interrogatory No. 1:

Did Defendant DSI deliver the furniture described in Exhibit A hereto to [Sampson]'s home . . . ? If yes, please provide the name, address, and telephone number of the person or persons who made the delivery.

Answer:

DSI contracted the delivery of furniture described at Exhibit A to [Sampson]'s home. Co-defendant [Mattress Firm] and contractor Dedicated Transportation delivered the furniture described in Exhibit A.

CP at 96 (some capitalization omitted).

Throughout its answers and responses to specific questions, DSI Logistics identified Dedicated as the entity that delivered the mattress to Sampson.

Interrogatory No. 3:

Did a contractor or Defendant DSI deliver the furniture described at Exhibit A hereto to [Sampson]'s home . . . ? If yes, please provide the name, address, and telephone number of the contractor that did so.

---

[2] This discovery was answered approximately 17 months prior to the filing of a third-party complaint against BNS by DSI Logistics.

Answer:

DSI objects to this interrogatory to the extent it seeks information not within DSI's possession or control. Subject to and without waiving the foregoing, co-defendant [Mattress Firm] and contractor of DSI, Dedicated Transportation delivered the furniture to [Sampson]'s home. Dedicated Transportation is owned by Valery Mukhin. DSI believes Valery is located at [address given]. The last known phone number DSI has for Valery is [phone number given].

CP at 96 (some capitalization omitted).

In its answers and responses to written discovery, DSI Logistics produced detailed and specific information that it was Dedicated that made the delivery to Sampson.

Interrogatory No. 10:

Did any employee of Defendant DSI discuss the delivery of the furniture described at Exhibit A with one or more of the men that delivered that furniture on January 9, 2019? If yes, please provide the following information:

A. The date of the discussion
B. The name, address, and telephone number of any person that participated in the discussion;
C. A detailed description of anything that was said about Sondra Sampson;
D. A detailed description of anything that was said about the delivery of the furniture

Answer:

DSI first learned of this incident on January 19, 2019, when Mattress Firm contacted DSI. Thereafter, DSI investigated Ms. Sampson's claims over the course of several weeks. On or around January 26, 2019, Jeff Costello, a former DSI manager, called Ms. Sampson. Ms. Sampson

6

explained that the furniture struck her two times during the January 9th delivery—once at the entrance of the home and another in the yard. Ms. Sampson indicated that she had to miss work as a result of her injuries. In speaking with Dedicated Transportation representatives later, Claude Jacobson, a former Regional Manager for DSI, learned that the delivery persons had asked Ms. Sampson to move away from the furniture and to give the delivery persons space but that Ms. Sampson refused.

DSI's last known contact information for Costello and Jacobson are as follows:

| Jeff Costello | Claude Jacobson |
|---|---|
| [address / phone / e-mail] | [address / phone] |

CP at 99 (some capitalization omitted).

Also in written discovery, DSI Logistics was asked by Sampson about a release

DSI Logistics had generated, which included Dedicated as a party to be released.

Interrogatory No. 9:

Why did the person who drafted Exhibit B [the release] include Dedicated Transportation as a released party?

Answer:

As a general policy, DSI drafts release of liability forms to include independent contractors working as haulers to ensure that the release covers all of the parties involved in the delivery.

CP at 98 (some capitalization omitted). The referenced release was drafted such that if

accepted, Sampson would be releasing: "DSI Logistics Inc. and Dedicated Transportation

LLC and his, her, their, or its employees, agents, servants, successors, heirs, executors,

administrators and all other persons[,] firms, insurers, corporations, associations or

partnerships . . . ." CP at 198.

*DSI Logistics' Order Detail*

On September 13, 2022, DSI Logistics, through counsel, sent a letter to Brenda

Soto, the president and owner of BNS, stating that it found a record that BNS, not

Dedicated, made the subject delivery to Sampson. Attached to the letter was a copy of a

DSI Logistics generated order detail. The order detail identifies that billing is approved

for contractor "BNS Installation Incorporated" and "Timonthy [Misiuk]" for customer

"Sondra Sampson" at Sampson's address on "Jan 09, 2019." CP at 353. The charges are

identified as $48.00 for revenue, and $32.50 as settlement. The "History" of the order

detail shows it was created "[o]n 01/15/2019 at 09:04 PM . . . by Jeff Costello." CP at

355.

*Spreadsheets*

In response to the summary judgment motion, DSI Logistics identified an invoice

prepared by BNS in the amount of $10,577.25 for deliveries made between January 7 and

January 13, 2019. DSI Logistics also identified a spreadsheet, with the claim that the

spreadsheet showed the breakdown for the $10,577.25 figure between seven delivery

drivers.

The $10,577.25 figure is at the top of the two-page document, with three headings

of amounts to be paid below, with drivers listed below each heading. The information,

relative to this document, includes:

- "Your amount [purportedly BNS] out of this total is $5,039.75." CP at 375 (some

  capitalization omitted).

  - Driver Jesus Ochoa

  - Driver Ronald Eltheridge

  - Driver Alaa Othman

- "Please pay Dedicated $2,068.75." CP at 375-76 (some capitalization omitted).

  - Driver Valery Muhkin

  - Driver Timothy Misiuk

  - Driver Mustafa Mahdi

- "Please pay Gold Lion $3,468.75." CP at 376 (some capitalization omitted).

  - Driver Falah Mahdi

Additionally, for each driver, there are columns that include the "Date," "Regular

Delivery," and "Hauler Share," among other columns for information. CP at 376. For the

date of January 9, 2019, the document shows Driver Timothy Misiuk had "3" regular

deliveries, but the "Hauler Share" attributed to Misiuk for work performed was $0.00. CP at 376.[3]

*Declaration of Brenda Soto*

In a declaration submitted in support of summary judgment, Brenda Soto, president of BNS, testified that BNS has no record of making a delivery to Sampson's address in Longview, Washington, or to anyone named Sondra Sampson. Additionally, Soto declared BNS has no record of billing DSI Logistics for the Sampson delivery. Similarly, BNS has no record of receiving payment for a delivery to Sampson or to Sampson's address by DSI Logistics. Further, Soto declared that BNS does not have, and never has had, an employee named Victor Onofrei. Similarly, BNS does not have, and never has had, an employee named Timothy Misiuk, with it instead known that Timothy Misiuk worked for Dedicated.

*Deposition of Timothy Misiuk*

During his deposition, Misiuk testified that he did not recall the name of the company he worked for when delivering mattresses. His cousin, Valery Mukhin, is who Misiuk worked for when delivering mattresses. When shown pictures of Sondra

---

[3] Driver Victor Onofrei is not identified on this document or any other document relative to a "sub hauler share" as to what amounts are to be paid for a particular day of work.

Sampson, Misiuk testified he had never seen her before, and that he had not delivered a

mattress to her home. More generally, Misiuk did not recall any occasion in which he

delivered a mattress where someone was injured. Misiuk testified:

> Q.    Right. Have you ever delivered a mattress, and while you're delivering it, you know, you and your coworkers accidentally injured someone?
> A.    No.
> Q.    Can you recall any instances in which someone claimed, after the fact, that you guys had hit them with a mattress or something?
> A.    No.
> Q.    Okay.
> A.    I'm pretty sure I'd remember if I hit somebody with a mattress.

CP at 186.

## *Deposition of Claude Jacobson*

Claude Jacobson, former regional manager of DSI Logistics, testified at his

deposition, "I have no idea" to the question of which entity DSI Logistics hired to

perform the Sampson delivery. CP at 358.

When asked questions about the order detail, Jacobson testified that these

documents are generated out of a "dispatch track system" and that is "how the guys

would have the information on their phones on where, who, and what to deliver." CP at

360. When challenged about the timing of this order detail being generated six days after

the Sampson delivery and the purpose of the order detail, Jacobson testified that there

were issues with the entry of information into the DSI Logistics system and it was

11

possible that BNS did not deliver the mattress, although to him it looked like BNS was paid for the delivery. When asked if Timothy Misiuk worked for BNS, Jacobson said, "I don't believe so." CP at 361. When asked why the order detail would show Misiuk's name under BNS if Misiuk did not work at BNS, Jacobson replied, "That's a great question. I'm not a hundred percent sure on that." CP at 361. Jacobson testified that the order detail showed that BNS was the contractor paid for the Sampson job, and Timothy Misiuk was the driver. With additional questions, Jacobson testified: "I feel like [Misiuk] worked for Dedicated." CP at 446.

Jacobson prepared a release for Sampson to consider, that would exchange monetary compensation for the release of both DSI Logistics and Dedicated. When asked why Jacobson included Dedicated on the release, and if the inclusion of Dedicated on the release indicated it had been determined by DSI Logistics that Dedicated made this delivery, Jacobson testified that he would have put whoever was determined to be the delivering entity on the release. Jacobson further testified, "it looks like . . . I did this and that Dedicated Transportation, in this scenario, is the contractor that took responsibility or accountability for it." CP at 431-32.

*Deposition of Jon Barrett*

Jon Barrett was designated to testify on behalf of DSI Logistics pursuant to

CR 30(b)(6) and was asked what he did to search for any and all records related to the

Sampson delivery. Barrett testified:

> Q. Have you done anything to determine the location of records to get ready for today?
> A. We looked for records. Yes.
> Q. Okay. So you looked, and what you're telling me is your company does not have records related to this delivery other than the payment detail? Is that right?
> A. Other than what I had viewed [the order detail], that's correct.
> . . . .
> Q. Okay. And it was your job to go out and find any other document; correct?
> A. It was my responsibility and job to go out and do a search and find out if there are those records.
> Q. And you did that and you found nothing else?
> A. Nothing else.

CP at 147. The only document DSI Logistics located was the order detail. Barrett offered

testimony on his knowledge of DSI Logistics' order detail.

> Q. Okay. What is this?
> A. It looks like it's an order detail.
> Q. All right. So your belief is there's another document called a manifest that has additional information about the delivery on it?
> A. I believe this was what I was referring to as a manifest.
> Q. Okay. So it says under "Contractor," it say "BNS Installation, Incorporated, Timothy [Misiuk]." What does that mean?
> . . . .
> A. *. . . I don't know who Timothy [Misiuk] is and what that represents.*

> Q.    . . . Do you see anywhere on this document where it lists the name of a person that made the delivery—the driver or the helper?
> A.    I do not.

CP at 145-46 (emphasis added). Barrett confirmed that the order detail was created by Jeff Costello six days after the delivery occurred and was entered into the DSI Logistics system to pay the company that made the delivery. Barrett testified that the only thing DSI Logistics could confirm from the order detail was that BNS was paid. As to which company made the delivery, Barrett did not know.

> Q.    The only people that have verified that they actually delivered the furniture—they worked for Dedicated; is that right?
>          [DSI COUNSEL]: Object to form.
> A.    I think they were identified as the team that made the delivery. *I don't know who they—if they worked for Dedicated or BNS.*

CP at 148-49 (emphasis added).

*DSI Logistics' responses to written discovery requests by BNS*

On December 1, 2023, DSI Logistics submitted answers and responses to BNS's first set of interrogatories and requests for production of documents. DSI Logistics confirmed that its sole reliance was on the order detail to say that BNS made the Sampson delivery.

DSI Logistics did not produce documents responsive to a production request for any financial records that confirmed DSI Logistics paid BNS for any services rendered in delivering Mattress Firm products to Sampson on January 9, 2019.

*Summary judgment*

In its motion for summary judgment, BNS argued that it could not be shown that BNS made the delivery to Sampson. Without proof that the Sampson delivery was made by BNS, the terms of the independent hauler contract were not engaged and, therefore, BNS was not in breach of contract.

Regarding the order detail, BNS argued that the document does not create a genuine issue of material fact and fails to establish that BNS actually performed the Sampson delivery. Information in the order detail is unclear with DSI Logistics' own deposition testimony showing DSI Logistics was unable to describe what was represented in the order detail. BNS argued that the only information DSI Logistics testified to, relative to the order detail, was that BNS was paid. However, DSI Logistics failed to produce a bank record or proof of payment, and BNS produced its bank records and there were no deposits from DSI Logistics.

BNS argued that the testimony of Timothy Misiuk verified that he had no memory of working for BNS but did know that he delivered Mattress Firm products for his cousin, Valery Mukhin, president of Dedicated. Misiuk's testimony was that he was "pretty sure" he would remember if he hit somebody with a mattress or bed frame, and he had no memory of anyone being injured by himself or a coworker during any delivery. CP at 63.

15

Regarding the spreadsheets, BNS pointed out that Misiuk's and Mukhin's names are listed under the heading "'PLEASE PAY DEDICATED.'" CP at 65. Further, DSI Logistics' own initial investigation demonstrated that it determined Dedicated made the Sampson delivery. BNS argued that it was only after DSI Logistics discovered that Dedicated was insolvent that DSI Logistics arrived at the conclusion that BNS performed the Sampson delivery.

BNS argued DSI Logistics failed to provide evidence to meet their burden to prevail on their allegations against BNS.

In response to BNS's motion for summary judgment, DSI Logistics argued that the facts, viewed in the light most favorable to DSI Logistics, supported a jury finding that employees or agents of BNS performed the Sampson delivery. DSI Logistics argued the deposition testimony of former regional manager Claude Jacobson showed that although Jacobson initially thought Dedicated made the delivery, he changed his conclusion once he saw the order detail. Jacobson's testimony was that the order detail showed that BNS was the contractor paid for the Sampson delivery. DSI Logistics also argued that Jacobson acknowledged that it would not take much for Misiuk to work for two different contractors at once. Finally, DSI Logistics argued that Jacobson acknowledged BNS had been selected as the contractor via a drop-down menu, and once selected, only drivers from that contractor can be selected. Therefore, with Misiuk

identified on the order detail, this indicated that Misiuk was the driver for BNS during the Sampson delivery.

DSI Logistics argued that despite BNS questioning the accuracy and origins of the order detail, even with BNS insinuating that the order detail was fabricated solely for the purposes of impleading BNS, there was no evidence the order detail was improperly fabricated and such speculation could not support a motion for summary judgment. Further DSI Logistics argued weight of the evidence is exclusively the function of a jury decision.

In addition, DSI Logistics identified that BNS's invoice in the amount of $10,557.25, which would be inclusive of the Sampson delivery date, was consistent with the spreadsheet details of the breakdown of the $10,557.25 among seven drivers. DSI Logistics argues that despite BNS's claim that Misiuk did not work for BNS, Misiuk's name appeared on the spreadsheet as one of the seven drivers seeking payment for work, and therefore Misiuk was a BNS driver.

DSI Logistics concluded that based on the order detail, BNS invoice, and spreadsheet, there was sufficient evidence for a jury to find that Misiuk was working as an agent of BNS on the date of the Sampson delivery.

After reviewing the submissions of the parties and hearing the arguments of counsel, the trial court granted BNS's motion for summary judgment. In its oral ruling,

the trial court noted the six-day delay in the creation of the order detail. The trial court

also noted Barrett's testimony that the order detail does not list the name of delivery

driver and Barrett was not sure who the driver was, or if that person was a BNS or DSI

Logistics person. Regarding the BNS invoice, the existence of the invoice was not in

dispute; however, there was no bank statement or financial document from DSI Logistics

that showed BNS was actually paid for the Sampson delivery. Regarding Misiuk's

testimony, Misiuk did not remember which company he worked for, and only

remembered that he worked for his cousin, Mukhin, who was the president of Dedicated.

Further, Misiuk testified that he did not recall ever having been involved in a delivery in

which someone was injured. Regarding the spreadsheets, it appeared that Misiuk was

listed as an employee of Dedicated. Regarding Jacobson's testimony, Jacobson

mentioned that he performed an investigation early on in which he spoke to Dedicated

representatives about the Sampson delivery. As a result of the investigation, a release was

prepared and sent to Sampson, with the hope that DSI Logistics and Dedicated would be

released. Lastly, at some point, Dedicated became insolvent, and that is when BNS was

added as a third party.

DSI Logistics timely appealed. A Division Three panel considered this appeal

without oral argument after receiving an administrative transfer of the case from Division

Two.

ANALYSIS

On appeal, DSI Logistics argues that the trial court (1) improperly weighed the evidence, (2) improperly assessed credibility, (3) improperly considered the likelihood that evidence will prove true, (4) improperly resolved issues of material fact in the moving party's favor, and (5) erred in failing to construe all evidence and reasonable inferences in favor of DSI Logistics, the nonmoving party. DSI Logistics asks this court to reverse the trial court's grant of summary judgment to BNS and remand for a trial on the merits.

BNS responds that DSI Logistics is unable to meet its burden of proof that BNS performed the subject delivery to Sampson and that the trial court correctly ruled in BNS's favor.

"A grant of summary judgment is reviewed de novo, with the reviewing court engaging in the same inquiry as the trial court." *McGowan v. State*, 148 Wn.2d 278, 289, 60 P.3d 67 (2002). "Summary judgment is properly granted when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Haley v. Amazon.com Servs., LLC*, 25 Wn. App. 2d 207, 216, 522 P.3d 80 (2022) (quoting CR 56(c)). "'A "material fact" is a fact upon which the outcome of the litigation depends, in whole or in part.'" *Id.*

19

(quoting *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974)). "When reviewing the affidavits and other evidentiary material, the trial court must construe all evidence and the reasonable inferences therefrom in favor of the nonmoving party." *Id*. at 217 (citing *Boyd v. Sunflower Props. LLC*, 197 Wn. App. 137, 142, 389 P.3d 626 (2016). "If any genuine issue of material fact exists, the court must order a trial." *Behla v. R.J. Jung, LLC*, 11 Wn. App. 2d 329, 347, 453 P.3d 729 (2019) (citing *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975)). However, "[m]ere allegations, argumentative assertions, conclusory statements, and speculation do not raise issues of material fact that preclude a grant of summary judgment." *Greenhalgh v. Dep't of Corr.*, 160 Wn. App. 706, 714, 248 P.3d 150 (2011) (citing *Seven Gables Corp. v. MGM/UA Ent. Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986)).

On appeal, DSI Logistics focused heavily on the trial court's rationale for granting summary judgment in its oral ruling. This court reviews summary judgment proceedings de novo, engaging in the same inquiry as the trial court, and does not rely on the trial court's rationale.

To survive summary judgment, DSI Logistics had to present evidence sufficient to create a genuine issue of material fact as to whether BNS made the delivery to Sampson on January 9, 2019. A negligence claim requires proof of (1) a duty of care, (2) a breach of that duty, (3) proximate causation, and (4) damages. *See Ranger Ins. Co. v. Pierce*

20

*County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Here, the threshold issue is whether

BNS was the delivery service responsible for the Sampson delivery because BNS would

owe no duty if BNS did not make the delivery.

In its motion, BNS presented substantial evidence supporting its contention that it

did not perform the Sampson delivery. That evidence included:

- The "Red Carpet Delivery Service" document showing on January 9, 2019, driver

  Victor Onofrei delivered to Sondra Sampson, at her home address in Longview,

  Washington, the items purchased from Mattress Firm between 5:22 p.m. and

  5:40 p.m.

- The declaration of Soto, President of BNS:

  ○ BNS has no record of making a delivery to Sampson's address in

    Longview, Washington, or to anyone named Sondra Sampson.

  ○ BNS has no record of billing DSI Logistics for the Sampson delivery.

  ○ BNS has no record of receiving payment for a delivery to Sampson or to

    Sampson's address by DSI Logistics.

  ○ BNS does not, and never has had, an employee named Victor Onofrei.

  ○ BNS does not, and never has had, an employee named Timothy Misiuk,

    with it instead known that Timothy Misiuk worked for Dedicated.

- DSI Logistics drafted a release that included Dedicated as an entity to be released.

- DSI Logistics' answers and responses to written discovery.[4]

  ○ Dedicated delivered the Mattress Firm items to Sampson.

  ○ Dedicated is owned by Valery Mukhin.

  ○ DSI Logistics investigated the incident within weeks of its occurrence:

    ▪ DSI Logistics learned of the incident from Mattress Firm on January 9, 2019.

    ▪ DSI Logistics Regional Manager, Claude Jacobson, contacted the Dedicated representative and learned a delivery person asked Sampson to move away and Sampson did not.

BNS submitted substantial evidence that Dedicated delivered the Mattress Firm products to Sampson, not BNS.

---

[4] CR 26(e)(2) outlines the duty to seasonably amend a prior discovery answer or response "if the party obtains information upon the basis of which: (A) the party knows that the response was incorrect when made, or (B) the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment." The purpose is to supplement or correct written discovery if acquired new information changes or contradicts previous answers or responses. This ensures that opposing parties receive updated information, maintaining the integrity of discovery.

There is nothing in the record to indicate DSI Logistics ever withdrew, amended, or took any action with regard to updating or changing these answers and responses to written discovery, which were produced in April 2022.

Once the moving party, BNS, meets its initial burden showing the absence of a

material fact, the burden then shifts to the nonmoving party, DSI Logistics, to produce

evidence to support its claim. *See Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770

P.2d 182 (1989).

DSI Logistics relies on three documents to argue that "when properly evaluated

alone or in conjunction, are sufficient to allow a reasonable jury to conclude that BNS or

its agent(s) made the subject delivery." Appellant's Reply Br. at 2. Those three

documents are:

> 1) the Order Detail; 2) BNS's Invoice charging DSI for deliveries
> made by BNS's sub haulers on January 9, 2019; and 3) Hauler
> Statistics showing Timothy Misiuk was a sub hauler assigned by
> BNS who was seeking payment for deliveries made on January 9,
> 2019.

Appellant's Reply Br. at 2.

DSI Logistics argues, relative to these three documents, that evidence that is

unverifiable goes to weight, not admissibility. Arguing that unverifiable evidence goes to

the weight rather than admissibility implicitly concedes that the evidence lacks sufficient

reliability to raise a genuine issue of material fact. Regardless, DSI Logistics primarily

argues that these documents create a genuine issue of material fact because they

contradict BNS's evidence. Competing evidence is not the same as affirmative evidence

showing that BNS performed this delivery.

*Order detail*

DSI Logistics' order detail identifies that billing is approved for contractor "BNS Installation Incorporated" "Timonthy [Misiuk]" for customer "Sondra Sampson" at her address in Longview, Washington, on "Jan 09, 2019." CP at 353. This order detail was created by a DSI Logistics employee on January 15, 2019.  Therefore, it was generated six days after the Sampson delivery. The timing of the order detail's creation raises questions about its purpose. DSI Logistics former regional manager, Claude Jacobson, initially testified that the purpose of the order detail was generated through the "dispatch track system" to inform the delivery service "where, who, and what to deliver." CP at 360. The postdelivery dated nature of this document suggests that this stated purpose by Jacobson was incorrect.

In following up on questions about the order detail, Claude Jacobson testified that he was not sure what was meant by the order detail listing "BNS" and "Timothy [Misiuk]," specifically answering that he had "no idea" who DSI Logistics hired for the Sampson job even when looking at the order detail. CP at 358. Jacobson testified he did not believe Timothy Misiuk worked for BNS. Similarly, DSI Logistics' CR 30(b)(6) designee, Jon Barrett, testified that he did not know who Timothy Misiuk was, or what the references to "BNS" and "Timothy [Misiuk]" as contractors on the order detail represented, ultimately testifying that the only thing the order detail showed was that

24

BNS was paid. However, DSI Logistics did not produce any other evidence, such as a bank statement or other financial record, to verify payment was made to BNS. BNS, on the other hand, produced bank statements that did not show any deposits for payment by DSI Logistics for the order detail it produced. While we must draw all reasonable inferences in favor of the nonmoving party, the nonmoving party is not permitted to rely on speculation or argumentative assertions to avoid summary judgment. *See Brummett v. Wash.'s Lottery*, 171 Wn. App. 664, 674, 288 P.3d 48 (2012). The trial court correctly determined that the order detail is insufficient to create a genuine issue of material fact. The document's postdated nature undermines its probative value. The order detail is insufficient to corroborate DSI Logistics' claim that BNS was involved in the Sampson delivery.

*BNS's invoice*

DSI Logistics identified an invoice prepared by BNS for a subtotal amount of $10,577.25 for the "Sub Hauler Share" of work relative to deliveries made between January 7 and January 13, 2019. The amount billed for the "Sub Haller Share" for work performed on January 9, 2019, the day of the Sampson delivery, is $2,386.00. There is nothing on this bill that itemizes or identifies what was done on January 9, 2019, or any other day, for whom, where, or for what. It is simply an invoice for seven days of work.

This document does not assist in knowing what BNS did on January 9, 2019, and does not confirm that BNS delivered Mattress Firm products to Sampson.

*DSI Logistics' spreadsheets*

In response to the summary judgment motion, DSI Logistics also identified a spreadsheet that it claimed showed how $10,577.25 was to be paid out for the work of seven delivery drivers. Although DSI Logistics attributed this document to something BNS created and also claimed that all of the drivers listed were BNS drivers, in looking at the document this was created by DSI Logistics, and the information conveyed relates to amounts to be paid to three different entities: BNS, Dedicated, and Gold Lion. Further, the format of this document is consistent with a similar document identified as having been created by "Jeff Costello, Portland DC [Distribution Center]—Manager" of DSI. CP at 328. Driver Timothy Misiuk is listed on this spreadsheet as a Dedicated driver, which undermines, rather than confirms, DSI Logistics' claim that BNS made the Sampson delivery. DSI Logistics' claim that Timothy Misiuk was working for BNS and made the Sampson delivery is further undermined by the information that shows Timothy Misiuk was listed as having been paid $0.00 for work performed on January 9, 2019, which can be interpreted to mean that Misiuk did not work on the day of the Sampson delivery. What this spreadsheet does convey, relative to information pertinent to this

No. 40581-8-III
*Sampson v. Mattress Firm, Inc.*

case, is that this spreadsheet is not evidence that affirmatively shows that BNS made a delivery to Sampson on January 9, 2019.

## CONCLUSION

The trial court correctly determined that DSI Logistics failed to present sufficient evidence to create a genuine issue of material fact as to whether BNS made the Sampson delivery. Accordingly, we affirm the trial court's summary judgment dismissal of DSI's third-party complaint.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Fearing, J.

_____
Cooney, J.

27